UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use of Allied Trades, Inc.<br><br>Plaintiff,<br><br>Briggs Brothers Enterprises Corporation and RLI Insurance Company,<br><br>Defendants. | Case No. _____<br><br><br>**COMPLAINT** |

The Complaint of the United States of America for the use and benefit of Allied Trades, Inc. ("Allied Trades"), by and through its undersigned counsel, against Defendants, Briggs Brothers Enterprises Corporation ("Briggs Brothers") and RLI Insurance Company ("RLI" or the "Surety"), states as follows:

### PARTIES, JURISDICTION AND VENUE

1.  Allied Trades, use Plaintiff in this action, is a corporation organized and existing under the laws of the State of South Carolina and authorized to conduct business in the State of South Carolina.

2.  Defendant Briggs Brothers is a corporation organized and existing under the laws of the State of Pennsylvania and, upon information and belief, at all pertinent times herein had its principal place of business located at 4749 Sansom Street, Philadelphia, Pennsylvania 19139.

3.  Defendant RLI is a corporation organized and existing under the laws of the State of Illinois and, upon information and belief, has its principal place of business located at 9025 N. Lindbergh Drive, Peoria, Illinois 61615.

4.  Jurisdiction of this action is founded on the Miller Act, Sections 3131 to 3134 of Title 40 of the United States Code Annotated (40 U.S.C.A. §§3131 to 3134). Further, regarding

those claims which are not expressly based upon the Miller Act, jurisdiction is established as such claims are so related to the Miller Act claim that they form part of the same case or controversy and arise from a common nucleus of operative facts, thus making supplemental jurisdiction proper.

5. Venue is proper in this District because the principal contract described below in Paragraph 6 between Briggs Brothers and the United States of America was to be performed in Charleston County, South Carolina.

## GENERAL ALLEGATIONS

6. Upon information and belief, The United States of America and Briggs Brothers entered into a written contract (the "Prime Contract") pursuant to which Briggs Brothers agreed to furnish labor, materials and services for the repairs of certain sewer mains at Joint Base Charleston in Charleston County, South Carolina (the "Project") in exchange for payment of $3,968,183.28, being known as Contract Number FA441822C0024 and Project Number DKFX 1052046, and dated July 29, 2022.

7. In accordance with Section 3131 of Title 40 of the United States Code (40 U.S.C.A. §§3131), Briggs Brothers, as principal, and the Surety, as surety, on August 3, 2022 executed a standard government form of payment bond to the United States (the "Payment Bond") pursuant to which Briggs Brothers, as principal, and Surety, as surety, bound themselves jointly and severally in the sum of $3,968,183.28, conditioned that if Briggs Brothers, as principal, shall promptly make payment to all persons supplying labor and materials in the prosecution of the work required by the Prime Contract, then the obligations of the payment bond would be void; otherwise, to remain in full force and effect. A copy of the Payment Bond is attached hereto as **Exhibit "A."**

8.  Upon information and belief, the Payment Bond was duly accepted by the United States and, on such acceptance, the contract for the construction and completion of the Project was awarded to Briggs Brothers.

9.  On or about September 19, 2023, Briggs Brothers engaged Allied Trades on a time and materials basis to perform tests on sewer pipes already installed by the original subcontractor working under Briggs Brothers.

10. As Allied Trade's inspections and testing progressed, Allied Trades discovered multiple deficiencies in the work installed by the original subcontractor working under Briggs Brothers.  The deficiencies included, among other things:

   a. Sewer lines not backfilled as per the specifications (which required backfill in 6 inch lifts and compaction tests by a soil testing agency and witnessed by the government with reports for compliance review);

   b. Sewer lines that did not pass the defection test and that were not installed with the correct slope;

   c. Sewer mains installed improperly and put into service which had led to backups to homes as well as sewer line laterals that were disconnected from main lines and had been dumping raw sewage into open trenches for several months; and

   d. Sewer lines that were not connected to the new sewer mains or manholes which also led to raw sewage running into open trenches.

11. As a result of these findings, Briggs Brothers engaged Allied Trades on a time and material basis to bring in vacuum trucks to remove standing sewage in open trenches, to address cave ins which had undermined existing utilities, and to facilitate cleanup and repairs.

3

12. Per the parties' time and material agreement, Allied Trades billed Briggs Brothers $135,621 for costs associated with inspection, testing, cleanup, and associated repair work on a time and material basis.

13. Indicating that it planned to require its original subcontractor to correct and remediate the work which had been installed up to that point, Briggs Brothers subsequently engaged Allied Trades to complete the remaining yet to be performed sewer work on the Project (the "Completion Work") pursuant to a written subcontract (the "Completion Subcontract").[1]

14. The Completion Subcontract between Briggs Brothers and Allied Trades was set forth in writing and contemplated payment of $1,700,000 pursuant to an agreed upon written Schedule of Values.

15. Allied Trades mobilized its forces and equipment to the Project for the purpose of finishing the yet to be performed sewer work and it began providing Quality Control/Quality Insurance as required under the Prime Contract which had a collective value of $163,132 pursuant to the Completion Subcontract's agreed upon Schedule of Values.

16. Unfortunately, and shortly thereafter, the government contracting officer instructed Briggs Brothers that additional yet to be finished work could not proceed on the Project until Briggs Brothers and/or its original subcontractor completed and corrected all of the previous work that had been improperly installed. The contracting officer further indicated that outstanding safety issues would have to be corrected and that Briggs Brothers would have to bring its schedule, pay applications, reports, and other required documentation current.

---

[1] Consistent with Briggs Brothers' plan to have its original subcontractor correct all improperly installed work, Briggs Brother's subcontract with Allied Trades was for completion of the unfinished work and expressly excluded correction of work that had already been improperly installed.

4

17. Allied Trades subsequently participated in several meetings in which representatives of Briggs Brothers were openly hostile to the requirements and directives of the contracting officer.

18. During a December 11, 2023 call, the contracting officer informed Briggs Brothers and Allied Trades that a Notice of Default had been issued to Briggs Brothers effective December 8, 2023 and that the contracting officer did not foresee an amicable resolution with Briggs Brothers.

19. Unable to proceed with the Completion Subcontract work, Allied Trades demobilized from the Project and began looking for other work in an effort to mitigate the unabsorbed home office overhead and lost profit damages it occurred as a result of Briggs Brothers' breach of the Completion Subcontract.

20. To date, Briggs Brothers has not made any payments to Allied Trades, leaving a balance past due and owing of $298,753.42 plus unabsorbed home office overhead and lost profits in an amount to be proven at trial.

21. All conditions precedent to filing this suit have been performed by Allied Trades.

### COUNT I – ACTION AGAINST MILLER ACT PAYMENT BOND
(Briggs Brothers and RLI)

22. Allied Trades incorporates paragraphs 1 through 21 above as if fully set forth herein.

23. More than ninety (90) days have expired since Allied Trades last provided any services or materials in connection with the Project.

24. Allied Trades has complied with all requirements of the Miller Act for perfecting a right of action under the Payment Bond, including but not limited to bringing this action within

one year after the last day on which Allied Trades furnished any materials or services, or both, to the Project.

25. Pursuant to the terms of the Payment Bond, Briggs Brothers and the Surety are jointly and severally liable to Allied Trades for all amounts due to Allied Trades for all equipment, materials, and services furnished on or for the Project pursuant to the Miller Act Sections 3131 to 3134 of Title 40 of the United States Code (40 U.S.C.A. §§3131 to 3134), such principal damages owed being $298,753.42 plus unabsorbed home office overhead, lost profits, interest, costs and attorney's fees in amounts to be proven at trial.

WHEREFORE, the United States of America, on behalf of and to the use of Allied Trades, Inc., requests a judgment against Defendants, Briggs Brothers Enterprises Corporation and RLI Insurance Company, each jointly and severally, for the sum of at least $298,753.42 plus unabsorbed home office overhead, lost profits, interest, costs and attorney's fees in amounts to be proven at trial and such other and further relief as the Court deems just and proper.

### COUNT II – BREACH OF SUBCONTRACT
**(Briggs Brothers)**

26. Allied Trades incorporates paragraphs 1 through 25 above as if fully set forth herein.

27. Allied Trades has fulfilled its contractual obligations to Briggs Brothers.

28. Briggs Brothers materially breached the Subcontract by failing to pay all amounts due to Allied Trades for equipment, materials, and services furnished on or for the Project.

29. As a direct and proximate result of Briggs Brothers's material breach of the Subcontract, Allied Trades has incurred least damages of at least $298,753.42 plus unabsorbed home office overhead, lost profits, interest, costs, and attorney's fees in amounts to be proven at trial and such other and further relief as the Court deems just and proper.

WHEREFORE, Allied Trades, Inc. requests a judgment against Defendant Briggs Brothers Enterprises Corporation for the sum of at least $298,753.42 plus unabsorbed home office overhead, lost profits, interest, costs and attorney's fees in amounts to be proven at trial and such other and further relief as the Court deems just and proper.

## COUNT III – S.C. CODE § 27-1-15 DEMAND
(Briggs Brothers and Surety)

30. Allied Trades incorporates Paragraphs 1 – 29 above as if fully set forth herein.

31. On or about August 7, 2024, Allied Trades sent certified letters to Defendants Briggs Brothers and Surety pursuant to S.C. Code Ann. § 27-1-15 demand payment of the principal amount of $298,753.42 under the Time and Materials Agreement and Subcontract. A copy of the demand is attached as Exhibit "B."

32. Based on their prior refusal to pay any portion of its claims, Allied Trades is informed and believes that Defendants will fail to conduct a reasonable and fair investigation and pay all undisputed amounts within 45 days of receiving the demand. Therefore, and to the extent this turns out to be so, Allied Trades is entitled to recover the amounts demanded plus interest at the judgment rate and all attorney's fees.

33. In accordance with S.C. Code Ann. § 27-1-15, Allied Trades seeks payment of all amounts due plus interest and attorney's fees.

## COUNT IV – QUANTUM MERUIT

34. The above allegations are incorporated herein by reference as if restated verbatim herein.

35. Allied Trades furnished materials and labor for the Project for the benefit of Briggs Brothers for which Allied Trades has not been paid. A fair and reasonable value for these materials, services and labor is at least $298,753.42.

36.     At the time Allied Trades provided the aforesaid materials and labor, Allied Trades reasonably expected to be paid for said materials and labor, and Briggs Brothers voluntarily and knowingly accepted the benefits of said materials and labor with reason to know that Allied Trades expected to be paid.  Allied Trades did not gratuitously supply any materials and labor to the Project.

37.     The acceptance of the materials and labor by Briggs Brothers created an implied contract in which Briggs Brothers would pay Allied Trades for the reasonable value of these materials and labor.  Briggs Brothers will be unjustly enriched if it does not pay Allied Trades for the material and labor supplied for its use and benefit.

38.     As a result of the foregoing, Briggs Brothers is liable to Allied Trades in an amount in quantum meruit or other equitable theory for reasonable value of the materials and labor in an amount to be determined at trial that is at least $298.753.42 for which it hereby sues, together with such other relief as to which it may be entitled.

WHEREFORE, Allied Trades, Inc. demands judgment for damages against the Defendants, of at least $298,753.42 plus unabsorbed home office overhead, lost profits, interest, costs and attorney's fees in amounts to be proven at trial and such other and further relief as the Court deems just and proper.

**SIGNATURES TO FOLLOW.**

Respectfully Submitted,

s/Mason A. Goldsmith, Jr.
Mason A. Goldsmith, Jr. (Fed. ID #7029)
H. Drennan Quattlebaum (Fed. ID #14131)
Elmore Goldsmith Kelley & deHoll, P.A.
19 Blair Street (29607)
Post Office Box 1887
Greenville, South Carolina 29602
Telephone: (864) 255-9500
E-mail: agoldsmith@elmoregoldsmith.com
E-mail: dquattlebaum@elmoregoldsmith.com
*Counsel for Allied Trades, Inc.*

August 13, 2024
Greenville, South Carolina